AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| IN THE MATTER OF THE SEIZURE OF  $1,000.00 U.S. | ) | Case No.    21-SZ-2 |
| CURRENCY IN ONE VENMO ACCOUNT | ) | |
| | ) | |
| PURSUANT TO 18 U.S.C. § 981 AND 28 U.S.C.  § 2461(c) | ) | |

**APPLICATION FOR A WARRANT**
**TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of
_____ Columbia _____ is subject to forfeiture to the United States of America under _____18_____ U.S.C 981(a)(1)(C)
_____                                                                                                          and 28 U.S.C. § 2461.
            *(describe the property)*:

> $1,000.00 in U.S. Currency from Venmo (a Paypal, Inc. entity) Account, #███████, External ID
> #███████, with username (@███████ and account name Insurgence USA, registered to phone
> number ███████ and address ███████, and connected to JPMorgan
> Chase Account #███████.

The application is based on these facts:

See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Matthew B.Foulger, Special Agent, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with  the requirements of Fed. R. Crim. P. 4.1 by telephone.
Sworn to before me and signed in my presence.

Date: ___04/28/2021___

G. Michael Harvey
2021.04.28 19:56:10
-04'00'
_____
*Judge's signature*

City and state:     ___Washington, D.C.___

G. Michael Harvey
_____
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| IN THE MATTER OF THE SEIZURE OF  $1,000.00 U.S. | ) | Case No.   21-SZ-2 |
| CURRENCY IN ONE VENMO ACCOUNT | ) | |
| | ) | |
| PURSUANT TO 18 U.S.C. § 981 AND 28 U.S.C.  § 2461(c) | ) | |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ District of _____ Columbia _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

$1,000.00 in U.S. Currency from Venmo (a Paypal, Inc. entity) Account, #██████, External ID #██████, with username ██████ and account name Insurgence USA, registered to phone number ██████ and address ██████, and connected to JPMorgan Chase Account ██████.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 05/12/2021
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to
_____ G. Michael Harvey _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days (not to exceed 30)   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____ 4/28/2021 _____

G. Michael Harvey
2021.04.28 19:56:34
-04'00'
*Judge's signature*

City and state:   _____ Washington, D.C. _____

G. Michael Harvey
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br><br>21-SZ-2 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

## ATTACHMENT A-2: PROPERTY TO BE SEIZED

$1,000.00 in U.S. Currency from Venmo (a Paypal, Inc. entity) Account, ████████, External ID #████████████████, with username ████████████ and account name Insurgence USA, registered to phone number ████████████ and address ████████████████████████ ████████████████, and connected to JPMorgan Chase Account #████████████.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF** | **Case No. 21-SZ-1** |
| **$89,875.00 U.S. CURRENCY IN ONE JP MORGAN CHASE ACCOUNT** | |
| **AND** | |
| **$1,000.00 U.S. CURRENCY IN ONE VENMO ACCOUNT** | **Case No. 21-SZ-2** |
| **PURSUANT TO 18 U.S.C. § 981 AND 28 U.S.C. § 2461(c)** | **Filed Under Seal** |

Reference:     *USAO Ref. # 2021R00297*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEIZURE WARRANT**

I, Matthew B. Foulger, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a seizure warrant for approximately $89,875.00 in U.S. currency in JPMorgan Chase account # ███████████ and $1,000.00 in U.S. currency in Venmo (a Paypal Inc. entity) account # ███████ with the username ███████████ belonging to John Earle Sullivan (the "Target Property"). The particular items to be seized are described in the following paragraphs and in Attachments A-1 and A-2.[1]

_____

[1] For the convenience and ease of reference of the Court, this affidavit supports the application for two separate seizure warrants, in D.D.C. Case No. 21-SZ-1 (for the target JPMorgan Chase account) and in D.D.C. Case No. 21-SZ-2 (for the target Venmo account). The same substantive affidavit will be filed in each case.

2.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

3.      I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI) and have been employed in that capacity for nine years.  I am currently assigned to the Salt Lake City Division of the FBI and have primary investigative responsibility for federal crimes related to national security and domestic terrorism.  I gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies. I have been trained to investigate federal crimes and have investigated an array of complex federal crimes.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.  Based on my training and experience and the facts as set forth in this affidavit, and pursuant to the indictment returned by a grand jury in the District of Columbia, I respectfully submit that there is probable cause to believe that a violation of 18 U.S.C. § 1512 have been committed by John Earle Sullivan ("Sullivan").  There is also probable cause to seize the Target Property described in Attachment A as property subject to forfeiture pursuant to 18 U.S.C. Section 981(a)(1)(C) and 28 U.S.C. § 2461.

**STATUTES**

5.      <u>Offense Statute.</u>  This investigation relates to violations of Section 1512 of Title 18 of the U.S. Code.  Specifically, 18 U.S.C. § 1512(c)(2) provides that "[w]hoever corruptly . . .

obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."

The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512,"

(1) the term 'official proceeding' means—
   (A) a proceeding before a judge or court of the United States … or a Federal grand jury;"
   (B) *a proceeding before the Congress;*
   (C) a proceeding before a Federal Government agency which is authorized by law; or
   (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…."

18 U.S.C. § 1515(a)(1) (emphasis added).

6.     <u>Forfeiture Statutes.</u>  Pursuant to 18 U.S.C. § 981(a)(1)(C) , any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1512 is subject to civil forfeiture. Criminal forfeiture is authorized when 18 U.S.C. § 981(a)(1)(C) is used in conjunction with 28 U.S.C. § 2461(c).  I am aware that courts have defined the "proceeds" of an offense broadly to include any property that would not have been obtained but for the underlying violation of law.  *See United States v. DeFries*, 129 F.3d 1293, 1313 (D.C. Cir. 1997) ("Because the but-for test usefully articulates the requirement of a nexus between the targeted property and the [criminal] activity, we adopt it."); *In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 551–52 (S.D.N.Y. 2011) (proceeds of an act are subject to forfeiture if the act constitutes a criminal offense; that the same act might have been legal in other circumstances does not mean that proceeds are not criminal proceeds); *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009); *United States v. Horak*, 833 F.2d 1235, 1243 (7th Cir. 1987).

7.     This application seeks a seizure warrant under both civil and criminal authority, because the property to be seized could easily be placed beyond process if not seized by warrant, as money is fungible and easily dissipated.

8.     18 U.S.C. § 981(b) states that property subject to forfeiture under § 981 may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed,  and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. 28 U.S.C. § 2461(c) incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for all stages of a criminal forfeiture proceeding.  Section 853 permits the government to request the issuance of a seizure warrant for property subject to criminal forfeiture. Seizures are appropriate from this district, because at least one of the predicate acts giving rise to forfeiture occurred in Washington, D.C., as described below.  Specifically, the conduct in violation of 18 U.S.C. § 1512 – which generated the Target Proceeds – took place within Washington, D.C. at the U.S. Capitol Building.

## PROBABLE CAUSE

### Factual Background

9.     On January 7, 2021, Sullivan participated in a voluntary interview with a FBI Special Agent in Washington, D.C.  Sullivan stated that he was in Washington, D.C. to attend and film the "Stop the Steal" March on January 6, 2021.  Sullivan also stated that he was at the U.S. Capitol on January 6, 2021, when scores of individuals entered it.  Sullivan stated he was wearing a ballistic vest and gas mask while there.  He showed the interviewing agent the ballistic vest.  He further stated that he entered the U.S. Capitol with others through a window that had been broken out.  Sullivan stated he followed the crowd as the crowd pushed past U.S. Capitol Police and followed the crowd into the U.S. Capitol.

10.    Sullivan further stated that he had been present at the shooting of a woman within the U.S. Capitol by a U.S. Capitol Police officer and that he had filmed the incident.  During the interview, Sullivan showed the interviewing agent the footage he had taken, which Sullivan stated

he had uploaded to the Internet.  The footage showed the area immediately outside of the Speaker's Lobby within the U.S. Capitol, the hallway from which one can enter directly into the chamber of the U.S. House of Representatives.  Sullivan also voluntarily provided two phone numbers and multiple social media accounts and identifiers, including a YouTube account username, JaydenX.

11.    On January 9, 2021, Sullivan voluntarily provided to law enforcement video footage that he stated that he recorded within the U.S. Capitol on January 6, 2021.  Sullivan sent a link to law enforcement from a Google Photos account under the name "John Sullivan."  A portion of the video, which is watermarked "JaydenX," was made publicly available by Sullivan on his YouTube channel.  A longer version of the video, which is watermarked "Insurgence USA," was also made publicly available by Sullivan on YouTube.  Sullivan's voice can be heard narrating throughout the video and speaking to other individuals and law enforcement officers.  At one point, the camera pans to a tactical vest and a gas mask being worn and held by the individual filming.





12.     Among other things, the video Sullivan recorded and provided to law enforcement shows Sullivan filming at the front of a crowd as they pushed through police barriers on the west side of the U.S. Capitol.  At the first moment the crowd breaks through, Sullivan can be heard saying, "they're going in."  The video follows the crowd as they move toward the Capitol Building where Sullivan captured additional scenes of individuals breaking through police barriers:



13.     After the crowd broke through the last barricade, and as Sullivan and the others approach the Capitol Building, Sullivan can be heard in the video saying at various points: "There are so many people. Let's go. This shit is ours! Fuck yeah," "We accomplished this shit. We did this together. Fuck yeah! We are all a part of this history," and "Let's burn this shit down."

14.     Later, Sullivan's video includes footage of individuals climbing a wall to reach a plaza just outside the Capitol Building entrance, as seen in the screenshot below.  As individuals are climbing the wall, Sullivan can be heard saying, "You guys are fucking savage.  Let's go!"



15.     At one point, Sullivan can be heard telling one of the individuals climbing the wall to give Sullivan his hand as individuals in the crowd are calling to help people up the wall.

16.     The video records Sullivan's entrance into the U.S. Capitol building through a broken window:



17.     Sullivan, once inside the Capitol Building, roamed the building with other individuals who unlawfully entered.  During one of his interactions with others, Sullivan can be heard in the video saying, "We gotta get this shit burned."  At other times as he is walking through the Capitol, Sullivan can be heard saying, among other things, "it's our house motherfuckers" and "we are getting this shit."

18.     In addition, several times during the video, Sullivan encounters law enforcement officers who are trying to prevent further advancement through the building by those who entered unlawfully.  In at least two encounters, Sullivan can be heard on the video arguing with the officers,

telling them to stand down so that they do not get hurt.  Among other things, Sullivan can be heard telling officers, "you are putting yourself in harm's way," "the people have spoken," and "there are too many people, you gotta stand down, the people out there that tried to do that shit, they got hurt, I saw it, I'm caring about you."

19.     At one point in the video, Sullivan enters an office within the U.S. Capitol.  Once inside the office, Sullivan approaches a window, also seen in the screenshot below, and states, "We did this shit.  We took this shit."

20.     While at the window, a knocking noise is heard off-screen.  The camera then pans to show more of the window and a broken pane can be seen that was not broken on Sullivan's approach to the window.  Sullivan can then be heard saying, "I broke it.  My bad, my apologies.  Well they already broke a window, so, you know, I didn't know I hit it that hard.  No one got that on camera."  Sullivan then exits the office.

21.     Later, Sullivan can be heard saying, "I am ready bro.  I've been to too many riots. I've been in so many riots."

22.     At another point in the video, Sullivan joins a crowd gathered before the main entrance to the House Chamber in the U.S. Capitol.  Sullivan can be heard on the video telling other individuals in the crowd, "there's officers at the door."  Less than two minutes later, while officers are still at the doors and as others yell to break the glass windows in them with various objects, Sullivan can be heard saying, "Hey guys, I have a knife. I have a knife.  Let me up."   At one point someone in the crowd says something about how people are "getting arrested," and Sullivan can be heard saying, "That's why I'm a photographer.  That's why you gotta have ID… It's ok though, you'll be fine, it's only a little jail time… I do this all the time."



23.     Eventually, individuals in the crowd outside the doors announce that the officers
are leaving and "giving us the building."  As the crowd begins to part so the officers can leave,
Sullivan can be heard saying, "Haul that motherfucker out this bitch."

24.     At another time in the video, Sullivan is walking down a hallway in the U.S. Capitol
with a large group of people.  Sullivan pans to a closed door and can be heard saying, "Why don't
we go in there."  After someone hits against the door, Sullivan can be heard saying, "That's what
I'm sayin', break that shit."  Further down the hall, Sullivan can be heard saying, "It would be fire
if someone had revolutionary music and shit."

25.     In the video, once Sullivan approaches the doorway to the Speaker's Lobby, where
a woman was eventually shot, Sullivan can be heard again saying, "I have a knife…. Let me
through I got a knife, I got a knife, I got a knife."   He can be heard telling one of the law
enforcement officers guarding the doors, as seen in the screenshot below, "We want you to go
home.  I'm recording and there's so many people and they're going to push their way up here.
Bro, I've seen people out there get hurt.  I don't want to see you get hurt."



26.     Eventually, the law enforcement officers begin to move to the adjacent wall and individuals within the crowd move toward the doors.  As this is happening, Sullivan can be heard yelling after the officers, "I want you to go home," and then yelling, "Go!  Go!  Get this shit!"  Sullivan then films as others in the crowd try to break out the glass in the entryway door windows.  Shortly thereafter, the video includes footage of a female [woman?] getting shot as she tries to enter through the window opening.

27.     On January 11, 2021, Sullivan participated in a voluntary interview with law enforcement agents, including your affiant, and showed agents the tactical vest and gas mask that matched those depicted in his video.  Two gas masks and a tactical vest were recovered, among other items, when a search warrant was executed at his home and vehicle on January 14, 2021.

28.     I have also reviewed U.S. Capitol Police surveillance footage depicting Sullivan that is consistent with the footage filmed from Sullivan's vantage point described above.

29.     On February 3, 2021, a grand jury in the District of Columbia returned an indictment against Sullivan on violations of 18 U.S.C. §§ 1512(c)(2) & 2 (Obstruction of an Official Proceeding and Aiding and Abetting); 18 U.S.C. §§ 231(a)(3) & 2 (Civil Disorders and Aiding and Abetting); 18 U.S.C. §§ 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds) and 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); and 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building) and

5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).  Count One of the indictment provides that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **JOHN EARLE SULLIVAN**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct.

D.E. 8, at 1-2.

30.    At various times in his statements to law enforcement, to others inside the U.S. Capitol that were recorded in his video, and to news outlets, Sullivan has claimed he was at the U.S. Capitol only to document and report.  In addition, your affiant is aware that, at various times since the events of January 6, 2021, Sullivan has claimed to be a journalist.  He admitted to law enforcement, however, that he has no press credentials and the investigation has not revealed any connection between Sullivan and any journalistic organizations prior to the events of January 6, 2021.

31.    I am also aware of various social media postings by Sullivan that undermine his claims to be a journalist or reporter.  For instance, Sullivan posted on January 6, 2021, a YouTube video entitled "Trump Supports Yell at Cops in DC" from on or about January 5, 2021 in Washington, D.C., in which he states to the camera, "I mean, didn't I kind of make up a background though, on the fly a little bit. I think I made up, uh—what did I say I was?  Oh, yeah, I was just a journalist, but I use that all the time. 'Yeah, I'm just a journalist.  I'm here recording.  I got my camera on my shoulder.'  Literally, I have my big-ass camera on my shoulder right here and I have my gimbal, so it kind of looks like it.  'Yeah, I'm just here recording the situation. Yeah. Livestreaming. Look, I have—I have people on my live stream.' That's why I pulled it back out." Moreover, or about December 11-13, 2020, Sullivan said on a Periscope livestream video that he posted, "Uh, I don't make money off it so I don't consider myself a journalist. But as far as like

reporting stuff like I am now, I'm an activist too, so like it kinda plays hand in hand. But as far as like being a journalist, it would be cool to be one, I don't have anything against it."

32.     I have also reviewed open-source news reporting about how on January 10, 2021, Sullivan changed the self-description on the homepage of his website from "Activist. Athlete. Motivational Speaker" to "Activist. Video Journalist. Athlete." over a photograph of himself protesting in tactical gear with an assault rifle outside the Utah state Capitol last summer; how on January 11, 2021, he again updated that text to "Video Journalist.  Activist.  Athlete."; and how on January 12, 2021, he changed the image to a loop from his video of the U.S. Capitol and further updated the text to just "Video Journalist."[2]

33.     I am aware that Sullivan is the founder of an organization called Insurgence USA through which he organizes and participates in protests.  On January 15, 2021, upon his arrest, a magistrate judge in the District of Utah imposed various pretrial release conditions on Sullivan, including – with Sullivan's consent – a condition that he "[c]an no longer work for Insurgence USA" and must "maintain or actively seek verifiable employment and/or maintain or commence an educational program as approved by the pretrial officer."  2:21-mj-00014, D.E. 6, at 2.  On February 15, 2021, prior to a hearing on his pretrial release conditions before a magistrate judge in the District of Columbia, Sullivan filed a pleading with the Court arguing, *inter alia*, that he should not be prohibited from working for Insurgence USA.  On February 16, 2021, the Honorable Robin M. Meriweather maintained, among Sullivan's pretrial release conditions, the requirement that "Defendant must no longer do any work for Insurgence USA, including the promotion, affiliation with, marketing of, or communication through Insurgence USA, InsurgenceUSA.com,

---

[2] https://theintercept.com/2021/01/14/capitol-riot-john-sullivan-ashli-babbitt/

or Insurgence USA social media channels, accounts, or handles, or other iteration of the entity."
21-cr-78, D.E. 16 at 2.

34.    In Sullivan's attempt to claim that he should not be prohibited from working for
Insurgence USA, Sullivan's pleading on February 15, 2021 had attached "receipts for services
documenting defendant's employment."  21-cr-78, D.E. 13, at 6.  Specifically, Sullivan attached
numerous invoices and/or agreements from various media organizations for the rights to use
Sullivan's U.S. Capitol footage from January 6, 2021.  D.E. 14.  Sullivan referred to the
attachments as a "Contract with ███████████," a "Contract with ███████████," and
"Agreement to release video footage with ███████████████," and a "License
Agreement with █████."  D.E. 13, at 6-7.  The attached exhibits also included a notification of
deposit from ██████████, which was not referred to in the pleading.  D.E. 14 at 3.

### Generation of the Target Proceeds

35.    I have reviewed recordings provided to law enforcement by W-1, an individual who
met up with Sullivan shortly after he exited the U.S. Capitol Building on January 6, 2021.  On the
recordings, Sullivan can be heard expressing excitement that he got the shooting of the woman on
film and states that "Everybody's gonna want this.  Nobody has it.  I'm selling it, I could make
millions of dollars."  W-1 also provided a video that films Sullivan, again seemingly shortly after
he left the Capitol Building, walking and telling an unnamed friend from his phone via
speakerphone, "I brought my megaphone to instigate shit.  I was like, guys we're going inside,
we're fucking shit up. … I'm gonna make these Trump supporters f-- all this shit up…. But i mean
you'll see.  I have it all, I have everything, everything on camera, everything I just told you, and I
mean everything. Trust me when I say my footage is worth like a million of dollars, millions of
dollars.  I'm holding on to that shit."

36.     After engaging in the alleged conduct – namely, attempting to obstruct or impede a proceeding before Congress by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct – Sullivan sold his recorded footage from the Capitol to various media companies.  The funds paid by these media companies, as described below, are the Target Proceeds that the government intends to seize in the instant warrant to prevent dissipation in advance of forfeiture.  Descriptions of the Target Proceeds, including where I believe they are located, are based on my training, experience, defendant's pleadings with the Court, and my review of lawfully obtained records.  They include:

- **$35,000 U.S. dollars in a JPMorgan Checking Account in the name of John E. Sullivan ending in** ▮▮ **(the "JPMorgan Account")**.  Sullivan filed with the Court an email from ▮▮▮▮▮ to Sullivan providing "Notification of ACH Deposit" and indicating that an "Invoice Amt" of $35,000 would be paid to "Vendor Name: JOHN EARLE SULLIVAN."  *See* 21-cr-78, D.E. 14 at 3.  The "Invoice Date" was listed as January 27, 2021.  In the email, the "Vendor Bank Account" number's last four digits were listed as "▮▮▮," the same as the JPMorgan Account.  On February 2, 2021, Sullivan received $35,000 into the JPMorgan Account from "▮▮▮▮▮▮▮▮▮▮▮"

- **$35,000 U.S. dollars in the JPMorgan Account**.  Sullivan filed with the Court what he described as a "License Agreement with ▮▮▮," attaching an agreement "entered into … on 6th day of January, 2021," between him and ▮▮▮▮▮▮▮▮ 21-cr-78, D.E. 14 at 2.  The agreement indicated that "35,000" would be paid to "Licensor: John Sullivan" for a license to use "Eyewitness video of the shooting at Capitol Hill 01/06/2021."  *Id.*  A check from ▮▮▮ issued by "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████" to "Sullivan, John Earle" for the amount of $35,000 was issued on March 18, 2021. On March 30, 2021, Sullivan made a deposit of $35,000 into the JPMorgan Account corresponding with that check.

- **$10,000 U.S. dollars in the JPMorgan Account**. The ████████████████████ has done at least two stories posting Sullivan's footage. On January 8, 2021, ██████ published an article that described and, attributed, and posted Sullivan's "JaydenX" video footage from inside the U.S. Capitol and stated that "Sullivan provided the video to ████████."[3] On January 16, 2021, ██████ published an article noting that "Sullivan has called himself a 'video journalist,' but admitted to the FBI that he has no connections to any media outlet. *Sullivan sold* ████████████████ *rights to use a portion of his video for a story on the shooting.*"[4]   On February 9, 2021, Sullivan received $10,000 in the JPMorgan Account from "████████████████████████"

- **$2,375 U.S. dollars in the JPMorgan Account**. Sullivan filed with the Court what he described as a "Contract with ████████████████," D.E. 13, at 6, attaching a "Remittance Advice" document from "████████████████████████" to Sullivan dated February 12, 2021, D.E. 14, at 1. The document noted an invoice dated January 27, 2021, for $2,500 minus a withholding tax of $125, for a total of $2,375 in U.S. dollars. 21-cr-7, D.E. 14, at 1.   An invoice from John Sullivan to an employee of ████████ ████████████████ dated January 27, 2021, shows a request for $2,500 for a "Non-

---

[3] ████████  An update appended to the article, dated January 15, 2021, stated, "[o]n Jan. 14, 2021, after this story and video were published, federal authorities charged Sullivan with obstructing law enforcement, knowingly entering a restricted building and engaging in disorderly or disruptive conduct on the Capitol grounds."

[4] ████████████████████████████████████ (emphasis added).

Exclusive License: Jan 6th, 2021 – Storming of the Capitol Footage."  On February 2, 2021, Sullivan received $2,375 via a Fedwire transfer to the JPMorgan Account from the "███████████████████████."

- **$5,000 U.S. dollars in the JPMorgan Account**.  Sullivan filed with the Court what he described as a "Contract with ███████████," D.E. 13, at 6-7, attaching a licensing agreement from "███████████████" for $5,000 for "Footage of the siege of the Capitol," D.E. 14, at 4.  On or about January 19, 2021, ███████████ entered into a licensing agreement signed by "John Sullivan" for $5,000 for "Eight (8) seconds of footage from the US Capitol riot on 1/6/21."  An invoice dated February 1, 2021, from John Sullivan to an employee of ███████████ shows a request as "Paid in Full" for $5,000 for a "Non-Exclusive License: Jan 6th, 2021, 8 Seconds Capitol Footage."  The invoice number was indicated as 1006, the due date was indicated as February 16, 2021, and Sullivan provided his JPMorgan account number ending in ████.  On February 10, 2021, Sullivan received a payment of $5,000 to the JPMorgan Account from "███████████████" corresponding to "Invoice 1006."

- **$2,500 U.S. dollars in the JPMorgan Account**.  Sullivan also issued an invoice to an employee of ███████████ dated February 5, 2021 for $2,500 for a "Non-Exclusive License: 10 seconds of Jan 6th, 2021 – Storming of the Capitol Footage."  The invoice number was indicated as 1007, the due date was indicated as February 20, 2021, and Sullivan provided his JPMorgan account number ending in ████.  On February 19, 2021, Sullivan received a payment of $2,500 to the JPMorgan Account from "███████████████" corresponding to "Invoice 1007."

- **$1,000 in a Venmo account ▮▮▮▮▮▮▮▮▮ with account name Insurgence USA belonging to John Sullivan.** Sullivan referred in his court pleading to an "Agreement to release video footage with ▮▮▮▮▮▮▮▮▮▮." D.E. 13, at 7. In a "Video Footage Release" dated January 11, 2021, signed by Sullivan and an employee at ▮▮▮▮ ▮▮▮▮▮▮▮, Sullivan granted "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮" permission to use "video footage from the siege of the U.S. Capitol, January 6, 2021" from his YouTube video. The release stated that "John Sullivan understands it will be compensated $1,000 for the use of the footage." On January 11, 2021, an employee of ▮▮▮▮▮▮▮▮▮▮ transferred $1,000 to Venmo[5] account @▮▮▮▮▮▮ identified as belonging to account holder "Insurgence USA." The payment was accompanied by a notation stating that the $1,000 payment was for "US Capitol Siege Footage license 1/6/21 from John Sullivan / Jayden X." Based on my knowledge of the case, and as described in paragraph 33 above, Sullivan is the founder and leader of Insurgence USA. The payment and corresponding notation are also publicly visible at www.venmo.com/insurgenceusa, which is the Venmo web address that Sullivan has crowd-sourced contributions from on his Facebook page. Lawfully obtained records show that the Venmo account ▮▮▮▮▮▮▮ is registered to a phone number Sullivan provided as his own in his January 7, 2021 interview with law enforcement, as well as Sullivan's former residence, where the search warrant was executed, and that the Venmo account is connected to Sullivan's JPMorgan bank account ending in ▮▮.

---

[5] Venmo is a mobile payment service owned by PayPal. Venmo account holders can transfer funds to others via a mobile phone app; both the sender and receiver have to live in the United States.

37.     Accordingly, there is probable cause to believe that the Target Proceeds funds are subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), and criminal forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c),  as property derived from proceeds traceable to a violation of 18 U.S.C. § 1512(c).   Specifically, the Target Proceeds represent the funds Sullivan obtained by filming and selling footage of the January 6, 2021 Capitol riots, which proceeds would not have existed but for Sullivan's illegal participation in and encouragement of the riots, property destruction, and violence inside the U.S. Capitol in violation of 18 U.S.C. § 1512(c).  *See DeFries*, 129 F.3d at 1313 (adopting the "but for" test); *In re 650 Fifth Ave. & Related Props*., 777 F. Supp. 2d at 551–52.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

38.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that staff from the United States Attorney's Office are capable of identifying my voice and telephone number for the Court.

## CONCLUSION

39.     Based on the forgoing, I request that the Court issue the proposed seizure warrant. Because the warrant will be served, in part, on JPMorgan Chase and Venmo (a Paypal, Inc. entity), who will then collect the funds at a time convenient to it and wire it to the government, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Matthew B. Foulger
Special Agent
Federal Bureau of Investigation


Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April 28, 2021

G. Michael Harvey
2021.04.28 19:57:17
-04'00'

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE